IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHANE CATHER, MINDI CATHER and VIRGINIA GALLUP,<br><br>  Plaintiffs,<br><br><br><br>  vs.<br><br><br>MICHAEL ISOM, dba ENGENUITY LIFE, ST. GEORGE, LLC, MIWE HOLDINGS, LLC, and RAYHAR LEGACY, LLC,<br><br>  Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS<br><br><br><br><br><br>Case No. 2:09-CV-52 TS |

This matter is before the Court on Defendants Michael Isom, Engenuity Life St. George, LLC, MIWE Holdings, LLC, and Rayhar Legacy, LLC's (collectively "Isom") Motion for Summary Judgment on All Claims. The Court will grant in part and deny in part for the reasons more fully set forth below.

## I.  BACKGROUND

In May 2006, Plaintiff Virginia Gallup invested $60,000 with James Kindred through his company Select Projects. Kindred provided Gallup with a promissory note for the same amount.

1

Kindred then gave Gallup's money to Michael Isom.  The $60,000 was to be used in a larger real estate investment plan headed by Rick Koerber and his company Franklin Squires. Gallup was told by Kindred that she would receive two percent interest a month on her investment.

Ms. Gallup received interest payments through December of 2007, at which point all payments stopped.  She was informed by Mr. Kindred that the economic conditions at the time were to blame.  Since that time Gallup has not received any additional payments, nor has she been refunded her initial investment.  Gallup filed this suit against Isom seeking recovery of the $60,000.  She has reached a settlement agreement with Mr. Kindred.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1]  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[2]  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[3]  "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]

---

[1]*See* Fed.R.Civ.P. 56(a).

[2]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3]*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.  DISCUSSION

Gallup brings her suit under Section 10(b) of the 1934 Securities Exchange Act.  That provision makes it "unlawful for any person, directly or indirectly . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."[5]  In its regulation interpreting § 10(b), the SEC makes it unlawful for

> any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange:
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.[6]

The parties do not dispute that untrue statements were made by Kindred to Gallup in connection with the sale of the security she purchased.

Gallup pursues two § 10(b) theories against Isom: (1) control person liability, whereby a secondary actor can be liable for the misrepresentations of a primary actor if the secondary controlled the primary's actions and (2) primary liability.  Isom denies both accusations.  Gallup also alleges claims under Utah's equivalent securities fraud statutes.

---

[5] 15 U.S.C. § 78(j).

[6] 17 C.F.R. § 240.10b-5.

A.     CONTROL PERSON LIABILITY

"Under [15 U.S.C. § 77o and 78t(a)], a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator."[7]  To establish control person liability, a party must show: "(1) a primary violation of [§ 10(b)] and (2) 'control' over the primary violator by the alleged controlling person."[8]  To establish a primary violation of § 10(b) as to Kindred, Gallup must show:

> (1) that [Kindred] made an untrue statement of material fact, or failed to state a material fact; (2) that the conduct occurred in connection with the purchase or sale of a security; (3) that [Kindred] made the statement or omission with scienter; and (4) that [Gallup] relied on the misrepresentation, and sustained damages as a proximate result of the misrepresentation.[9]

In his memoranda, Isom contends that Kindred did not act with scienter and thus cannot have committed a primary violation.

> The term "scienter" has been defined by the Supreme Court of the United States as "a mental state embracing intent to deceive, manipulate, or defraud." The Supreme Court has further elaborated on the meaning of the term by stating: "The words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct."[10]

---

[7]*Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304-05 (10th Cir. 1998).

[8]*Id.* at 1305.

[9]*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1225 (10th Cir. 1996).

[10]*City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 197 (1976)).

4

As Isom notes, Gallup stated in her deposition that she did not think that Kindred had intentionally deceived her.[11]  Thus, Isom claims that there is no dispute of fact as to scienter and that Isom is entitled to judgment as a matter of law.  The burden therefore becomes Gallup's to prove the existence of a disputed material fact.

Gallup responds by arguing that "[w]hether or not Mrs. Gallup believed that Kindred had attempted to deceive her or had dishonest intentions at the time the investment was made is immaterial.  The fact is that she testified that she later learned that things Kindred told her were not true."[12]  This contention may be both true and proper with respect to the determination of whether a misrepresentation was *made*, but as it relates to the element of scienter, it is incorrect.  Gallup must show that Kindred acted with scienter.  Gallup fails to point the Court to any evidence showing that Kindred made his statements with the intent to deceive.  In fact, the only thing on point in Gallup's submissions—her statement that she doesn't think Kindred did anything wrong— supports the opposite conclusion.  Accordingly, the Court finds that Gallup has not met her burden of establishing a dispute of material fact as to the control person claim and grants summary judgment in favor of Isom.[13]

--------

[11]Docket No. 47-1, at 37-39.

[12]Docket No. 59, at 15.

[13]Isom also argues against control person liability on the grounds that Isom did not have control over Mr. Kindred.  Though Isom's arguments on this point also appear to have merit, it is unnecessary for the Court to reach them because a lack of primary violation on Kindred's part is fatal to the control person claim.

B.      PRIMARY LIABILITY

The Tenth Circuit recognizes that a secondary actor can be subject to a primary liability claim if there is a showing that the secondary actor "knew or should have known that his representation would be communicated to investors," on top of the other requirements for a primary violation.[14]

There is some disparity in the case law regarding whether a concept or statement must be attributed to the secondary actor by the primary actor in order for the secondary actor to be liable. Isom encourages the Court to adopt such a requirement.  In *SEC v. Wolfson*,[15] the Tenth Circuit recognized that some courts were applying an attribution requirement, and that this requirement was based on the necessity of proving reliance in a § 10(b) action.  Noting that reliance is not a required showing in a public enforcement action, the Court declined the invitation to adopt an attribution requirement in a public enforcement.  In so doing, the court also emphasized that it had "never adopted an attribution requirement in a private securities case."[16]  Accordingly, the Court will not apply the standard here.

The pertinent question thus becomes whether Isom knew or should have known that his statements would be conveyed to investors.  Gallup has provided a sworn statement from Kindred which details the interactions between Kindred and Isom.  Kindred makes the following assertions:

---

[14]*Anixter*, 77 F.3d at 1226.

[15]*S.E.C. v. Wolfson*, 539 F.3d 1249 (10th Cir. 2008).

[16]*Id.* at 1259.

> I was in Isom's office when he told me I might like to know about the opportunity to loan money through him to be used to purchase new homes through short-term bridge loans used to purchase private individual family residences[17];
> [Isom] told me that the investment would pay interest at a rate of three percent a month on the principle amount invested.  He suggested that I keep one percent for myself and that others who invested money along with me could receive two percent a month for their money[18];

Based on these averments, a reasonable juror could conclude that Isom knew his statements would be communicated to investors that Kindred enlisted.  Accordingly, the Court finds that there is a disputed issue of material fact as to whether Isom knew or should have known that his statements would be passed on.

Isom also argues that he cannot be primarily liable because Gallup did not actually rely on any statement from Isom.  Gallup does state that after meeting with Isom, Kindred attended a seminar hosted by Rick Koerber that "described the same things that Isom had told Kindred, except Koerber talked about using equity in homes that was not doing anything or earning interest."[19]  This statement is purportedly based on Kindred's affidavit.  Thus, apparently feeling that Koerber's presentation wiped Kindred's memory as to Isom's statements, Isom argues that when Kindred conveyed the information to Gallup he was passing along Koerber's rather than Isom's representations.  However, in his affidavit, Kindred explicitly states that he passed along information conveyed by Isom: "On May 25, 2006, Virginia Gallup gave me a check in the amount of $60,000.  She asked me questions about the investment and I provided her with the

---

[17]Docket No. 59-6, at 1.

[18]*Id.* at 1-2.

[19]Docket No.59, at 4.

information that I had been told by Isom."[20]  Based on this statement, a reasonable juror could

conclude that Gallup relied on Isom's representations as related by Kindred, and thus the Court

finds that there is a material dispute of fact.

In light of the foregoing, the Court finds that summary judgment is not appropriate on

Gallup's primary liability claim.

Gallup has also filed a motion asking for leave to file a second reply brief.  The

arguments contained therein add nothing new to the primary liability discussion above.

However, she does argue facts that, while explicitly advanced in support of a control person

liability claim, are better employed in pursuit of a co-conspirator liability theory.[21]  Gallup's

Complaint, while far from a model of clarity, also contains allegations that this Court could

plausibly construe as a claim premised on conspiracy liability.  Because Isom's Motion asks for

summary judgment on all claims and a conspiracy claim is fairly encompassed within the

Complaint, the Court will analyze the argument.

This Court has recognized that a secondary actor can be primarily liable as a

co-conspirator in a conspiracy to defraud.[22]  As a threshold requirement, a plaintiff must show

that "a particular participant could be primarily liable as a co-conspirator under Rule 10b-5."[23]

Then the plaintiff must go on to show that whichever conspirator she wishes to hold liable

---

[20]Docket No. 59-6, at 4.

[21]Docket No. 71, at 5 ("The whole investment program constituted a scheme to defraud within which Defendant Isom was a prominent member, or participant . . . .").

[22]*Wenneman v. Brown*, 49 F. Supp. 2d 1283, 1289 (D. Utah 1999).

[23]*Id.*

entered into a scheme to defraud her with the particular co-conspirator who is shown to be

primarily liable.[24]  If successful, the result is that the co-conspirator can be held primarily liable.

The Court notes, without deciding, that it may be the case that Gallup has offered sufficient proof

that Isom was part of a criminal conspiracy to defraud.  However, to the extent Gallup wishes to

impose primary liability on Isom through a conspirator liability mechanism, she must show that

some other person in the conspiracy is primarily liable.  Kindred cannot fill those shoes, as noted

above.  Nor has there been any showing that Rick Koerber or any of the other alleged participants

Gallup names are primarily liable to Gallup.[25]  Accordingly, the only potential primary liability

hook for a conspiracy claim, based on the evidence submitted, is Isom.  Because co-conspirator

liability is just another way of arriving at primary liability, to prove that Isom is primarily liable

in order to show that Isom is liable as a co-conspirator would be an exercise in redundancy.

C.     STATE LAW VIOLATIONS

        In *Wenneman v. Brown*, this Court stated that Utah Code Ann. § 61-1-22, though

modeled after the Federal law,

> contains a more stringent standard for applying primary liability.  The Utah Act
> imposes primary liability on the part of those who offer, sell, or purchase
> securities in violation of its provisions.  Because the Utah Act requires this
> essential element of privity between the seller and buyer, primary liability is
> limited to "sellers" of securities.

---

[24]*Id.*

[25]Potentially, if Gallup's primary liability argument does not work against Isom, she
might be able to get to Isom through conspiracy liability based on Koerber's violations.
However, Plaintiff has not argued this theory, nor engaged in any analysis regarding a violation
as to Koerber.

The issue of whether a party is considered a "seller" under the Utah Act is governed by the same standard as that which applies to claims of primary liability under § 12(2) of the Federal Securities Act of 1933. Section 12(2) defines a "seller" as one who actually passes title to the stock or who actively solicits the purchase motivated by a desire to serve his own financial interests or those of the securities owner. Under this standard, [a plaintiff must show that the accused] was . . . in privity, as a seller, with [plaintiff].[26]

Ms. Gallup does not contend that there was privity between Isom and herself, and thus there can be no primary liability under § 61-1-22.

The statute also recognizes the possibility of control person liability. This Court noted in *Wenneman v. Brown* that the statute is to be construed so "as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate interpretation and administration of this chapter with the related federal regulation."[27] Accordingly, the same control person standards apply here as under the federal law discussed in the preceding section—Plaintiff must show "(1) a primary violation of [§ 10(b)] and (2) 'control' over the primary violator by the alleged controlling person."[28] Because there has been no showing that Kindred committed a primary violation, Isom cannot be held secondarily liable.[29]

---

[26]*Id.* at 1290 (internal quotation marks and citations omitted).

[27]*Id.* at 1291.

[28]*Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1305 (10th Cir. 1998).

[29]The statute also allows for aider and abettor liability against a secondary party that assists the primary party in a violation. *Wirth v. Taylor*, 2011 WL 4001157, at *8 (D. Utah, Sept. 8, 2011). Neither party has addressed this form of liability in their submissions. However, Gallup would still be required to show a primary violation by Kindred in order to make out this claim. Because Gallup has not done so, Gallup would not be able to succeed on an aider and abettor claim even if she had addressed it.

Finally, the Court notes that Gallup has asserted an unlicensed broker/dealer claim against Isom.  Though Isom could not be primarily liable on such a claim for the reasons discussed above, Isom could be subject to control person liability for any violation by Kindred of the broker/dealer requirements if Isom exercised sufficient control over Kindred.[30]  Isom has not engaged in any analysis or offered any evidence relating to Gallup's broker/dealer claim, and thus that part of Gallup's state law claim remains viable.

In light of the foregoing, the Court will grant summary judgment in favor of Isom on the § 61-1-22 claims for primary liability and control person liability, while noting that Gallup's claim for broker/dealer liability remains viable.

D.     OTHER MOTIONS

In conjunction with her second response to the Motion for Summary Judgment, Gallup filed a motion for leave to file the response, as well as a motion for a retroactive extension of time to file the reply.  The Court will grant both motions.

## IV.  CONCLUSION

The Court will grant summary judgment in favor of Isom on Gallup's control person liability, conspiracy liability, and state securities law violations with the exception of Gallup's broker/dealer claim, but the Court will deny summary judgment on Gallup's primary liability claim.  It is therefore

ORDERED that Defendant's Motion for Summary Judgment on All Claims (Docket No. 46)  is GRANTED IN PART and DENIED IN PART. It is further

---

[30]*Id.* at *9.

ORDERED that Plaintiff's Motion for Enlargement of Time to Respond to Motion for Summary Judgment (Docket No. 69) is GRANTED.  It is further

ORDERED that Plaintiff's Motion for Leave to File Response to Defendant's Reply Memorandum and Supplemental Materials and Argument (Docket No. 70) is GRANTED.

DATED   January 5, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

12